IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | CASE NO. 4:06cr198 |
| v. | § | |
| | § | |
| ROBERT ARBUCKLE | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
**REGARDING PROOF OF CLAIM**

This matter having been referred by the Honorable Michael H. Schneider, the Court has considered Tim Smith's, John Karhoff'S, Kent Peterson's, Palwinder Singh Hara's and Robert Laswell's Proof of Claim in this matter (Dkt. 61). After considering the evidence and the arguments of counsel at the June 11, 2008 hearing, the Court finds that the Petitioners' claims should be DENIED.

Before the Court are Petitioners' claims of an interest in property forfeited to the government in the criminal case against Robert Arbuckle. The petitioners are former franchisees of a company owned by Arbuckle and known as **Moola Zoola.** Commencing in 2003 and for a period of at least two years, Petitioners all signed franchise agreements with **Moola Zoola.** The agreement provided that the franchisee fee was $1.00. In addition, Petitioners were required to buy **Moola Zoola** card-kits which required significant expenditure of sums. The franchisees were also given a territory in which they could sell the cards.

The **Moola Zoola** card was a value-stored device whereby a person could have his or her payroll check deposited on to the card and then the card could be used much like a debit card. In fact, the card could even be sent to family or friends outside the United States. Arbuckle's sales-

1

pitch was enticing, and, like so many schemes that promise easy money and instant riches, the only one who got rich was Arbuckle.

Early on, the investors discovered the errors of their ways and spent considerable time and effort trying to get Arbuckle to refund the price of the cards they had purchased. Arbuckle's frequent response was that reimbursement money was just around the corner. In fact, Arbuckle did refund some of the card costs but most investors recovered less than 10% of their investment.

While the investors continued to receive promising emails from Arbuckle, he was on to bigger fish – eBay participants who used Pay Pal. Arbuckle (and presumably other conspirators) entered into a scheme to make more moola than the legitimate **Moola Zoola** enterprise could ever accomplish. Arbuckle concocted a scheme to steal identity information off Pay Pal and then take funds from the participants' accounts using their personal information and having the monies stolen loaded onto the **Moola Zoola** card. Some cards were sent overseas, and Arbuckle kept the remainder to launder money and obfuscate any paper trail. Within a few months, federal agents arrested Arbuckle, seized his house, and seized money from his accounts including the corporate account for **Moola Zoola.**

The first hurdle for Petitioners is a significant one, that of standing. All franchise agreements were between **Moola Zoola** and the individual Petitioners or companies the Petitioners incorporated to handle the card business. According to testimony proffered by the Government, only a little over $14,000 in funds was seized from the **Moola Zoola** accounts. All other property seized presumably was Arbuckle's personal property.

Arbuckle was never sued by any of the Petitioners, nor were any judgments ever obtained against Arbuckle personally or, for that matter **Moola Zoola**, except for an arbitration award handed

down in March 3, 2006 in favor of Lyemance, a company organized by Petitioner, Ted Smith.

Any claim by the Petitioners that there was a breach of contract action against Arbuckle individually fails because, by the terms of the agreements, there is no showing of privity of contract. Further, there is no evidence that there were any material or fraudulent misrepresentations on Arbuckle's part early on. Even the arbitration award refused to award Lyemance any recovery for fraudulent misrepresentations.

The acts of a corporate agent on behalf of the principal are ordinarily deemed to be the corporation's acts. *Holloway v. Skinner,* 898 S.W.2d 793, 795 (Tex. 1995); *COC Servs., Ltd. v. CompUSA, Inc.,* 150 S.W.3d 654, 675 (Tex. App.- Dallas 2004, pet. denied). The individual employee or officer who acts for a corporation is that corporation's agent. *See Cappuccitti v. Gulf Indus. Prods., Inc.,* 222 S.W.3d 468, 485 (Tex. App.- Houston [1st Dist.] 2007, no pet.). However, it is the general rule in Texas that a corporation's employee is personally liable for tortious acts in which he participates during his employment. *See Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex. 1984); *Kingston v. Helm,* 82 S.W.3d 755, 758 (Tex. App.- Corpus Christi 2002, pet. denied). Also, a corporate officer who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent of the corporation. *See Kingston,* 82 S.W.3d at 759. It is not necessary to pierce the corporate veil in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing. *See id.* The fraudulent transfer of assets is a tort. *See* TEX. BUS. & COM. CODE ANN. § 24.005; *In re Texas Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex. App.- Dallas 2005, orig. proceeding).

As stated, the Petitioners have undertaken no affirmative steps to sue Arbuckle for fraud. There are no judgments, and none of the Petitioners are judgment creditors as to Arbuckle or, for that matter, **Moola Zoola.** The single arbitration award has never been enforced by a court and thereby reduced to judgment.

Petitioners did file an involuntary bankruptcy action against **Moola Zoola.** That case was dismissed. The bankruptcy court determined that Mrs. Arbuckle's voluntary Chapter 7 proceeding demonstrated that all material assets had been seized by the Government. Therefore, the Petitioners were left with nothing to proceed against.

The Forfeiture provisions are outlined in 21 U.S.C. § 853. To successfully prevail, the Petitioners must show that they had superior right, title, or interest in the property forfeited and that such right vested in them or was superior to any right of the defendant at the time of the commission of the acts giving rise to the forfeiture. 21 U.S.C. § 853(n)(6)(A). The forfeiture statute mandates a superior interest in that property. *United States v. Corpus,* 491 F.3d 205, 209 (5th Cir. 2007); *see generally United States v. Campos*, 859 F.2d 1233, 1239 (6th Cir. 1988) ("Such a *superior* interest would clearly be one in the nature of a lien, mortgage, recorded security device, constructive trust, valid assignment, or the like.").

Petitioners argue that they are entitled to a constructive trust. A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App.- Fort Worth 2004, pet. denied). To obtain a constructive trust, the proponent must prove: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Id.* However, the proponent of a constructive trust must strictly prove the elements necessary for the imposition of the trust. *Id.*

Even if the Petitioners could demonstrate actual fraud in the initial transaction, they cannot trace the their monies to an identifiable res.  Evidence demonstrated that the **Moola Zoola** account contained only a fraction of what the Petitioners invested some three to four years earlier.  There was no showing that the monies were traceable to the Petitioners' original investment, and any tracing was, for all purposes, impossible at this late date.

Unfortunately for the Petitioners, there is little they could have done to better preserve their rights, and the Court, with regret, finds their claim should be denied.

## RECOMMENDATION

The Court recommends that the District Court **DENY** Petitioners' Claims as to the seized property.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 18th day of June, 2008.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE